MAY C. HERBERT, EXECUTRIX OF THE ESTATE OF ELLEN A. HERBERT, DECEASED, PLAINTIFF-APPELLEE, v. EMILY CORBY, DEFENDANT-APPELLANT, AND EUGENE A. KELLY, DEFENDANT.

Argued October 3, 1939—Decided February 16, 1940.

Before BROGAN, CHIEF JUSTICE, and Justices DONGES and PORTER.

For the plaintiff-appellee, *Howe & Davis* (*Edward L. Davis,* of counsel).

For the defendant-appellant, *Alfred J. Grosso.*

BROGAN, CHIEF JUSTICE. The precise question in this case is whether a law court has jurisdiction to entertain a suit by a plaintiff-mortgagee against an assuming grantee of plaintiff's mortgagor for a deficiency after foreclosure sale. It will be helpful to state the pertinent facts briefly as taken from the pleadings.

The complaint alleges that on June 8th, 1926, Kelly, one of the defendants (the mortgagor), gave the usual bond and a mortgage to secure the payment of $8,000 on June 8th, 1927, with interest payable semi-annually. Kelly conveyed the mortgaged premises to Emily Corby, the other defendant (appellant here), who assumed the mortgage and promised to pay it. The mortgage was foreclosed and, after final decree fixing the amount of the debt, the lands and premises were sold. The sum realized from the sale was insufficient to clear the debt. The sale was confirmed. The deficiency amounted to $2,965.84.

The agreement between Kelly, the grantor, and Corby, the assuming grantee, is pleaded in detail. The allegation is that therein it was provided that Emily Corby took "the property subject to and assuming a first mortgage," in the amount of $8,000 and that subsequently Kelly conveyed the premises to Mrs. Corby and that in making payment to Kelly the said Emily Corby "deducted from the purchase price the sum of $8,000" being the amount of the mortgage and "as a matter of law assumed payment thereof and is under a legal duty to pay the same as part of the consideration in said deed expressed."

On motion, the answer filed for Mrs. Corby was challenged. The learned trial judge struck out the answer and judgment for the amount of the deficiency was entered against her. The plaintiff's affidavits in support of the motion to strike out the answer had annexed to them the contract of sale. No answering affidavit was presented by the defendant.

The question that is here argued is concerned with the jurisdiction of the law court to entertain the suit. The appellant claims a want of jurisdiction. That question was not raised in the court below. It may be raised here. Jurisdiction goes to the source of the court's authority and if there was none the judgment is a nullity.

There are two schools of thought on the question before us. One holds that where an assuming grantee makes a promise direct to his grantor (the mortgagor) that he will pay the debt, the mortgagee is a party beneficially interested and is entitled to sue the promising grantee at law in his own name as though the grantee made the promise to him direct. This is upon the theory that the liability arises directly out of contract and not on the equitable doctrine of subrogation. In equity the covenant of the assuming grantee is treated as one for the indemnification of the mortgagor.

The other view arises out of an exclusively equitable conception of the relationship of the parties and the reasoning proceeds upon the theory that the assuming grantee's liability to the mortgagee arises by the mechanics of subrogation which entitles the mortgagee (since the mortgagor becomes surety under these circumstances) to all the security which the mortgagor has out of the assumption of the debt by the grantee, and thus equity entitles the mortgagee to recover on the agreement between the mortgagor and the grantee.

The first view adheres to what Professor Pomeroy calls an American doctrine. Our state has been classed by the text-writers as an adherent to the second school of thought. (See *Pom. Eq. Jur.* (4th ed.) §§ 1206, 1207, and notes under each section.)

We have found no case, and counsel for the parties here have pointed to none, where our court of last resort has passed on this precise question. True, there are statements in some of the cases to which attention will be called which indicate that the suit for deficiency, after foreclosure sale, by a mortgagee against an assuming grantee does not lie; or perhaps it is more accurate to say that the cases indicate that the mortgagee's remedy for deficiency against an assuming grantee is equitable in its nature and that equity is the exclu-

sive forum if the mortgagee would be made whole. We do not, however, consider these cases controlling of the issue before us since the statements are, in the main, *dicta;* and indeed not a few of the authorities on which appellant relies seems to be in accord with the view which we entertain, that is, that jurisdiction exists at law.

The continued adherence in this state to what we have referred to as the second school of thought results, we believe, from two scholarly opinions in the same case, one by Vice-Chancellor Van Fleet in *Crowell* v. *Currier,* 27 *N. J. Eq.* 152, 154, and the other by Mr. Justice Depue on an appeal from the decree in that case—*sub nomine, Crowell* v. *Hospital of St. Barnabas,* 27 *Id.* 650. The decree was affirmed. On the point of that case that interests us, the vice-chancellor, among other things, said that the remedy of the mortgagee is purely equitable; that he had no remedy at law, citing and indeed relying upon *Klapworth* v. *Dressler,* 13 *Id.* 62; the opinion in that case (at *p.* 66), says that the complainant (mortgagee) had no remedy whatever at law. The question there was whether the assuming grantee was liable to the mortgagee for a deficiency. The parties were in the Court of Chancery. With proper respect for the opinion in that case we nonetheless have the view that the question of whether the assuming grantee might sue at law was not in the case and that the pronouncement just mentioned was *dicta.* The case proceeded upon the theory, relying upon unimpeachable authority, that a creditor, *i. e.,* mortgagee, is entitled to the benefit of all collateral obligations for the payment of the debt, which a person standing in the position of surety for others has received for his indemnity and to relieve him or his property from liability for such payment. This, of course, is a very ancient equitable principle recognized from earliest days, and is still the law of this state. But adverting again to the opinion of the Court of Chancery, in the case of *Crowell* v. *Currier, supra,* it may not be amiss to point out that the learned vice-chancellor, in commenting upon the New York rule as expressed at that time in the case of *Burr* v. *Beers,* 24 *N. Y.* 178 (which held that an action at law lies under these circumstances and before foreclosure on the

covenant made to the mortgagor by a grantee to pay the mortgage, was enforceable at law upon the broad principle that if one person makes a promise to another for the benefit of a third person that third person may maintain an action on it), takes pains to say, "This principle, in its application to *simple* contracts, has given rise to a great contrariety of judicial opinion. So far as it applies to simple contracts, it must be regarded as settled in this state for the present," citing *Joslin* v. *New Jersey Car Spring Co.,* 36 *N. J. L.* (at *p.* 146). But the vice-chancellor continues, "It has never been understood to apply to contracts under seal and *Burr* v. *Beers* is, so far as I know, the first attempt in that direction."

The Crowell case was decided in 1876, so we see that at the time a third party beneficiary might sue on a *simple* contract though the consideration did not move from such third party. But the rule was otherwise with regard to sealed contracts.

The change in our statute designated under the revision— *R. S.* 2 :26-3.6—was first made in 1898 to include *sealed* as well as simple contracts. (Chapter 207, *Pamph. L.* 1898, *ch.* 247; chapter 251, *Pamph. L.* 1902, *ch.* 247; paragraph 28, *Pamph. L.* 1903; *Comp. Stat., p.* 4059, § 28.) Thus it will be perceived that since 1898 the statute permitted a person for whose benefit a contract was made, *either simple or sealed, to sue thereon in any court;* it seems apparent that the common law rule was extended to include sealed as well as simple contracts. The 1898 statute was entitled "An act to regulate the practice of courts of law" and there is much significance in the title. Our Practice act of 1903 (page 541, section 28) is, in substance, identical with the present statute (2 :26-3.6).

In *Styles* v. *Long,* 70 *N. J. L.* 301, the Court of Errors and Appeals, we think, recognized the changed situation that emerged from the passage of the 1898 statute. While we do not consider the situation apropos of the point under consideration, nonetheless, it has much collateral significance. The late Mr. Justice Swayze, who wrote the opinion for our court of last resort, said, "The difficulties which presented themselves in the case of suits by third persons upon contracts

made by others were two—the want of privity and the want of consideration moving from the third person. These difficulties have been overcome in this state as to contracts *not under seal,* by decisions of the courts. (*Joslin* v. *New Jersey Car Spring Co.,* 7 *Vr.* 141; *Whitehead* v. *Burgess,* 32 *Id.* 75; *Economy Building and Loan Association* v. *West Jersey Title Co.,* 35 *Id.* 27; *Elmer* v. *Loper,* 37 *Id.* 50), and as to contracts *under seal* by the statute. (Italics ours.) The only effect of the decisions and the statute is that privity of contract is not requisite in order to maintain the action, and the consideration need not move from the person for whom the contract is made." Now the Styles case, *supra,* held that in order that a person not party to a contract may maintain an action thereon, it must appear that the contract was made for him. It is not sufficient that he be merely benefited by its performance. Was the plaintiff, mortgagee here, merely an incidental beneficiary of the grantee's promise to pay so as to be within this interdiction? Compare *Holt* v. *United Security Life Insurance and Tr. Co.,* 76 *N. J. L.* 585; *Knapp* v. *Heidritter Lumber Co.,* 99 *N. J. Eq.* 381. We do not think so. See *Tapscott* v. *McVey,* 82 *N. J. L.* 35. There provision was made in a contract between two persons, naming plaintiff as broker and providing for payment of his commissions; the contract was under seal; it was held enforceable by the broker in a suit at law. See, also, *Burt* v. *Brownstone Realty Co.,* 95 *Id.* 457. So, too, in *Chambers* v. *Philadelphia Pickling Co.,* 79 *Id.* 1, a purchaser of a business who agreed to assume and pay claims against the previous owner was held liable at the suit of a creditor of the former owner on the contract of the assumption of debts. It was held that this contract was for the benefit of the plaintiff. See, also, *Fleming* v. *Reed,* 77 *Id.* 563.

It serves no good purpose to pursue this inquiry further. Certainly a grantee who assumes a mortgage debt and promises to pay it makes a contract with the grantor for the benefit of the mortgagee. We cannot, at the moment, imagine a contract, made more for the benefit of a third party. Parenthetically, we observe, although the point is not raised, that this suit is based upon the terms of the contract of sale, not

on the deed of conveyance. It is clear that the contract merges into the deed but only in so far as the execution of the deed satisfies and gives effect to the terms of the contract. Collateral agreements therein do not merge and may be treated as separate covenants upon which suit may be brought. So here the assumption agreement is such. See *Dieckman* v. *Walser,* 114 *N. J. Eq.* 382; *Meyer* v. *Supinski,* 125 *Id.* 584, 588.

Our conclusion is that the cases upon which appellant relies for a reversal of this judgment were grounded on the state of the law prior to the 1898 amendment, *supra,* but that since the passage of that statute a court of law has jurisdiction to entertain a claim such as the plaintiff here presents.

The judgment will therefore be affirmed.