431 So.2d 672 (1983)
Roy Frederick PETERSON, Appellant,
v.
Jack Harold PETERSON, Appellee.
No. 82-1953.
District Court of Appeal of Florida, Third District.
May 3, 1983.
Rehearing Denied June 8, 1983.
Donald F. March, Darrey A. Davis, Miami, for appellant.
Emilio C. Pastor, Miami, for appellee.
Before HENDRY, NESBITT and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
Roy Peterson, the appellant herein, sued his brother Jack. Roy sought the specific performance of an agreement between the parties, which provided in pertinent part:
"WHEREAS, ROY FREDERICK PETERSON and OMA LEE PETERSON, his wife, hereinafter collectively referred to as "Roy", have this day conveyed unto JACK HAROLD PETERSON, hereinafter referred to as "Jack" a Life Estate in the following described property:
"Lot 10 in Block 9 of ZENA GARDENS according to the Plat thereof recorded in Plat Book 46 at Page 51 of the Public Records of Dade County, Florida, and,
"WHEREAS, the parties desire to enter into this Agreement relative to their respective interests in said property,
"NOWTHEREFORE [sic], in consideration of said Life Estate it is agreed.
"1. In the event "Jack" shall cease to occupy said property as his permanent residence he should forthwith Quit Claim all right, title and interest to "Roy" without any further consideration whatsoever."
At trial, Roy proved beyond any dispute that the agreement, as it recites, was entered into contemporaneously with a deed from Roy to Jack giving Jack a life estate in the subject property. He also proved, again without dispute, that Jack had ceased *673 to occupy the property several years before and had, indeed, leased the property to a tenant. Despite a record that clearly established Roy's entitlement to the immediate return of the property, the trial court, merely announcing that it was "persuaded that the equities are with the Defendant, Jack Harold Peterson,"[1] entered final judgment for Jack, holding that his life estate shall terminate only with his demise. Without any hesitation, we reverse this inexplicable judgment.
Jack attempts to defend the judgment in his favor on the ground that the agreement to quitclaim the property to Roy when Jack ceased to occupy the property was unenforceable because the agreement was merged into the deed of the same day which made no mention of the separate agreement. It is clear, however, that merger of the agreement into the deed could not have been the basis of the trial court's judgment. At the outset of the trial, the court told Jack's counsel:
"This [merger] is what you said in your appeal and the court threw it out. So, there is no merger. The District Court of Appeals says no merger. So, the only question in front of me is, does Jack have a residency on that property, is that his home or not."
Although the trial court's conclusion was based on an incorrect reading of our dismissal without prejudice of Jack's earlier appeal from a non-final order not authorized by Florida Rule of Appellate Procedure 9.130, its statement that "The District Court of Appeals says no merger" was nonetheless presciently correct. There was no merger.
An agreement, as here, made contemporaneously with a deed so as to show consideration for a promise to reconvey the property upon a certain stated condition, is valid. See Blair v. Kingsley, 128 So.2d 889 (Fla. 2d DCA 1961). Where an agreement is collateral to, or independent of, the provisions of a deed, there is no merger. Graham v. Commonwealth Life Insurance Co., 114 Fla. 585, 154 So. 335 (1934); Gabel v. Simmons, 100 Fla. 526, 129 So. 777 (1930); Opler v. Wynne, 402 So.2d 1309 (Fla. 3d DCA 1981), rev. denied, 412 So.2d 472 (Fla. 1982); Soper v. Stine, 184 So.2d 892 (Fla. 2d DCA 1966). Accord, Riddle v. Colliver, 116 Fla. 723, 156 So. 880 (1934). See Annot., 52 A.L.R.2d 647 (1957). Here the agreement by its very terms reflects the intent of the parties that it be independent of the deed. See Industrial Development Foundation of Auburn v. United States Hoffman Machinery Corp., 11 Misc.2d 625, 171 N.Y.S.2d 562 (1958). Moreover, the agreement, again by its very terms, could not become effective until after the delivery of the deed, since prior to that time Jack would have no life estate to forfeit by ceasing to occupy the property. Cf. Chicago Title & Trust Co. v. Wabash-Randolph Corp., 384 Ill. 78, 51 N.E.2d 132 (1943) (provision in contract of sale requiring vendee to establish an easement over the property not merged in deed containing no such provision, since agreement to establish easement could not become effective until after delivery of deed).
In Industrial Development Foundation of Auburn, 11 Misc.2d 625, 171 N.Y.S.2d 562, the parties entered into a contract for the conveyance of certain premises to the defendant. The contract provided, inter alia, that the defendant would reconvey the premises at the option of the plaintiff if industrial operations and employment of labor as contemplated were not continued for five years from the date of the deed. About a year later, the premises were deeded to the defendant. Several years thereafter, the plaintiff, claiming that the defendant had discontinued its industrial operation and employment of labor, brought an action to compel the defendant to specifically perform its agreement to reconvey. The defendant claimed that the contract was merged in the subsequent deed and was thus inoperative. The court rejected the defendant's claim, stating:

*674 "In the contract here under consideration, the agreement on the part of the defendant to reconvey the premises in the event of the breach of the condition subsequent was a continuing obligation for a period of five years from the date of the deed to said defendant. This covenant was entirely independent of the provisions of the contract relating to the original conveyance to the defendant. It imposed a collateral and continuing duty upon the defendant for a period of five years after the delivery of the deed. Thus, the contract itself by its very terms showed there was no intention that such provisions should merge in the deed.
... .
"Defendant claims that because nothing was later inserted in the deed it indicated that the parties then intended a merger. There is nothing in the correspondence to indicate any intent to abandon the provisions of the 9th paragraph of the contract, and the more logical inference to be drawn is that the parties by inserting no modification of the paragraph in the deed intended to retain the provisions of the contract as originally drawn." 171 N.Y.S.2d at 568, 569.
Similarly, in the present case, the agreement imposed upon Jack a continuing obligation during his life to reconvey the premises to Roy in the event that Jack breached the condition subsequent by ceasing to occupy the premises. Since the breach is perfectly clear, Roy was entitled to the entry of a judgment in his favor requiring Jack to reconvey the premises and return to Roy all rent from the premises collected by Jack after he ceased to occupy the premises.
Reversed and remanded with directions to enter judgment for the appellant in accordance with this opinion.
NOTES
[1] Jack put on no evidence at all. The only evidence which could conceivably be an equity would be that Jack in violation of the agreement rented the property to a tenant who was unaware of the agreement. That might be considered an equity in the tenant, not a party to this action, but it is hardly one in favor of Jack.